### HARRISON et al. v. HEINER, Collector of Internal Revenue.

District Court, W. D. Pennsylvania. November 1, 1928.

No. 3252.

See, also, 28 F. (2d) 990.

W: G. Heiner, of Pittsburgh, Pa., for plaintiff.

John D. Meyer, U. S. Atty., and W. J. Aiken, Asst. U. S. Atty., both of Pittsburgh, Pa., and John R. Wheeler and John A. McCann, Sp. Attys. of Bureau of Internal Revenue, both of Washington, D. C., for defendant.

GIBSON, District Judge. The plaintiff has brought suit to recover certain moneys which are alleged to have been illegally collected by the defendant, collector of internal revenue, as part of the taxes of the Thomas Cronin Company for the years 1917 to 1922, inclusive. The parties waived a jury trial. Upon hearing before the court, the following facts were developed:

28 F. (2d)—62½

### Findings of Fact.

(1) E. J. Harrison and H. R. Donnally are the duly appointed, qualified, and acting receivers of the Thomas Cronin Company, a corporation; the said receivers having been duly appointed by the court of common pleas of Allegheny county, in and for the state of Pennsylvania.

(2) Thomas Cronin Company, the above-named plaintiff, is, and at all times hereinafter mentioned was, a corporation organized and existing under the laws of the state of Pennsylvania, engaged in the general contracting business, with its principal office in Pittsburgh, Pa.; the said receivers having been duly substituted, on or about June 8, 1927, for Thomas Cronin Company, a corporation, original plaintiff in the above-entitled action, by an order of this court.

(3) D. B. Heiner, the above-named defendant, has been collector of internal revenue of the Twenty-Third district of Pennsylvania since August 1, 1921.

(4) During the years 1920 to 1922, inclusive, plaintiff herein entered into certain contracts with the city of Pittsburgh, Pa., providing for the payment and maintenance by the plaintiff of certain public streets and alleys in said city, in consideration of the payment to the plaintiff by the city of Pittsburgh of certain sums of money. There is attached to the agreed statement of facts filed in the case of E. J. Harrison and H. R. Donnally, receivers of Thomas Cronin Company, v. Lewellyn, formerly collector, and made a part hereof and marked Exhibit A, a copy of the form upon which said contracts were drawn. All of said contracts with said city were in the same form as Exhibit A.

(5) During the years 1920 to 1922, inclusive, plaintiff herein entered into certain contracts with the county of Allegheny, in the state of Pennsylvania, providing for the pavement and maintenance by the plaintiff of certain public roads in said county, in consideration of the payment to the plaintiff by said county of certain sums of money. There is attached to the agreed statement of facts filed in the case of E. J. Harrison and H. R. Donnally, Receivers, etc., v. Lewellyn, etc., and made a part hereof and marked Exhibit B, a copy of the form upon which said contracts were drawn. All of said contracts with said county were in the same form as Exhibit B.

(6) On March 15, 1921, plaintiff filed with C. G. Lewellyn, then collector of internal revenue for the Twenty-Third district of Pennsylvania, its income and profits tax re-

turn for the calendar year 1920, and paid 50 per cent. of the tax shown thereon to this defendant.

(7) On March 15, 1922, and on March 15, 1923, plaintiff filed with the defendant its income and excess profits tax return for the calendar years 1921 and 1922, respectively. The amounts of tax shown in said return were paid to the defendant herein.

(8) The taxes shown on the corporation's income and profits tax returns for the years 1920 to 1922, inclusive, filed as above set out, were calculated upon a profit arrived at by deducting from the total amount paid to the plaintiff under the contract the costs to the plaintiff of the completion of the roads or streets and an estimated amount which it was contemplated would be expended for maintenance of such roads or streets during the designated period. The profits thus reported were calculated as of the date of the completion of such roads and without regard to the period of maintenance.

(9) At the time of completion of such roads or streets as provided in any contract, and without regard to the period of maintenance, plaintiff received the balance of the contract price (provided for in the contract under which the roads or streets were completed) over and above the installments theretofore paid to it under the monthly estimate plan as provided for by said contract, so that upon completion of the construction work the plaintiff was paid in full.

(10) That early in 1923 the Commissioner of Internal Revenue made additional assessment of income and profits taxes against the plaintiff as follows:

For the year 1917................. $10,885.16
For the year 1918.................  11,453.87
For the year 1919.................   3,784.00

—which additional taxes were paid to the defendant on July 23, 1923.

(11) On April 30, 1924, plaintiff filed with D. B. Heiner, collector of internal revenue, Twenty-Third district of Pennsylvania, amended income and profits tax returns for the calendar years 1920 to 1922, inclusive. Upon said returns plaintiff computed its taxable net income or net loss as follows:

| Calendar Year. | Taxable Net Income or Loss. |
|---|---|
| 1920 | $14,311.74 |
| 1921 | 50,195.50 |
| 1922 | 5,546.86 |

(12) Subsequent to the filing of said amended returns, as above set out, plaintiff filed with the Commissioner of Internal Revenue amended balance sheets for said years, which set out that the gross profits from the contracts above referred to were carried as a liability until the end of the designated maintenance period.

(13) In computing the taxable net income on said amended returns, the plaintiff reported the amounts received by it upon completion of the roads or streets as provided in the said contracts, and the total expenditures made in so completing such roads or streets, and in addition thereto it reported actual amounts expended for maintenance of such roads or streets from the date of completion of them to the end of the period of maintenance.

(14) That the average period within which the roads and streets were to be completed, under the contracts entered into between the plaintiff and the city of Pittsburgh and the county of Allegheny, during the period 1920 to 1922, were six months, and the period of maintenance was either one or five years.

(15) Part 2, standard form of contract for street improvement, at paragraph 13, pages 4 and 5 (Exhibit A), provides that the pavement laid under such contract shall be kept and maintained as specified by the contractor at his own expense for a period of either one year or five years, depending upon the character of the pavement installed. The character of pavement installed under each contract here involved made necessary the maintenance by the plaintiff of such pavement for five years from date of completion thereof.

(16) Paragraph 24, pages 66 and 67 (Exhibit B), provides for the maintenance of the roads by the contractor at his own expense, for a period of five years after the completion of the roads laid under said contracts with the county of Allegheny, state of Pennsylvania.

(17) During the years 1920 to 1922, inclusive, the plaintiff kept its books and filed its returns on the accrual basis, and not on the cash receipts and disbursements basis.

(18) Photostat copies of the original and amended income and profits tax returns filed by the plaintiff for the years 1920, 1921, and 1922 are attached hereto and hereby made a part hereof.

(19) On April 30, 1924, plaintiff filed with D. B. Heiner, collector of internal revenue, Twenty-Third district of Pennsylvania, claim for refund of $59,978.57, covering the period 1917 to 1922, inclusive. Said claim is based upon amended returns, as set out in

paragraph 11 of this stipulation, and included payments to the defendant for the years 1921 and 1922, and also payment of 50 per cent. of the tax due for the year 1920, and payment of additional taxes as set out in paragraph 10 above, amounting in all to $38,668.93. This claim was rejected by the Commissioner of Internal Revenue on November 8, 1924.

(20) Beginning in 1915, plaintiff corporation has been required to maintain for five years the roads and streets constructed by it for the city of Pittsburgh and county of Allegheny, under contracts. These contracts were standard printed contracts, which required plaintiff to maintain the roads and streets constructed by it, free from defects arising from workmanship or materials, for a period of five years.

(21) A bond was required, in the case of every contract, to secure the faithful performance by plaintiff of both the construction work and the maintenance work.

(22) In cases where the construction work extended over a period of part of two years, and where installments of the contract amount were received and expenditures for construction were made during part of two years, plaintiff corporation, upon its original returns for the years 1917 to 1922, inclusive, carried such installment receipts as liabilities and such expenditures as assets until the year in which the construction was finished and the balance of the contract amount received, and not until that year was any report made of such installment receipts or expenditures.

(23) The Commissioner of Internal Revenue never objected to withholding installment receipts and construction expenditures on plaintiff's original returns for 1917–1922, as outlined in the preceding paragraph.

(24) In cases where the construction work extended over a period of part of two years, and where installments of the contract amount were received and expenditures for construction were made during part of two years, plaintiff corporation, upon its amended returns for the years 1917 to 1922, inclusive, reported such installment receipts as liabilities and such expenditures as assets until the year in which the maintenance period expired.

(25) Upon the original income tax returns of plaintiff corporation for the years 1917 to 1922, inclusive, the annual additions to a reserve covering the estimated cost of maintenance were deducted from the total contract amount.

(26) The Commissioner of Internal Revenue refused to allow plaintiff corporation to deduct the annual additions to the reserve for maintenance.

(27) As the result of said refusal, plaintiff corporation was compelled to pay to the defendant, under protest, additional taxes of $10,885.16, $11,453.87, and $3,784 for the years 1917, 1918, and 1919, respectively.

(28) On March 13, 1923, plaintiff corporation filed with the Commissioner of Internal Revenue a waiver, consenting to a determination, assessment, and collection of income and profits taxes for the year 1917, irrespective of any period of limitation.

(29) Plaintiff corporation never attempted to report, either upon its original or amended income tax returns, a percentage of profit from its contracts, such profit based upon a percentage of completion of work at the end of a given year.

(30) Plaintiff corporation kept its books by accounting for a net profit or loss from an individual contract, irrespective of the net profit or loss from other contracts.

(31) Plaintiff corporation kept its books and accounted for its income by the same method and basis of accounting every year.

(32) During the period from 1917 to 1922, inclusive, maintenance was required 6.6 times on 3 out of every 12.5 jobs.

(33) During the period from 1917 to 1922, inclusive, plaintiff corporation set up on its books an average annual addition to the reserve for maintenance of $10,013.10. Of this amount 53.99 per cent. was subsequently expended by plaintiff corporation for maintenance.

(34) In the case of some jobs, the amount set up as a reserve to take care of maintenance was insufficient to cover the cost thereof.

## Opinion.

The Thomas Cronin Company, from 1917 to 1922, inclusive, was engaged under contracts in constructing roads for the county of Allegheny and the city of Pittsburgh. In a number of instances the construction work began in one year and was finished in the next. In such cases the company was from time to time in receipt of installments of the contract price of the work, but such installments, prior to the completion of the work, were not always entered by it upon its books as a part of its gross income for the year in which received. When the completed work had been turned over to the other party to the contract, and the last installment had been received, the company included the total amount paid it as a part of its income for the year of the completion of the road.

Prior to such entry upon its books, the company carried the installments so received as liabilities and the construction expenditures as credits. Under each of its contracts the company was required to maintain the road free of all defects arising from materials or construction for a period of five years after completion, and, to show the net gain or loss upon the job, the construction expenditures and an estimated reserve for maintenance were placed against the total of the installments on the books of the company.

Pursuant to its method of accounting, the Thomas Cronin Company filed its tax returns for the years 1917 to 1922, inclusive, wherein it reported the total of the installments as gross income of the year in which the road was finished, and deducted expenditures and an estimate for the five-year maintenance period, to show the net income upon the job. The company paid the taxes shown by its returns for the years 1917, 1918, 1919, and 50 per cent. of the 1920 tax to defendant's predecessor in office, and the taxes, so shown, for the years 1921 and 1922, with 50 per cent. of the 1920 taxes, were paid to the defendant. In 1923 the Commissioner assessed additional tax against the company for the years 1917, 1918, and 1919, the amount of which was paid to the defendant under protest. The basis of the assessment was the disallowance of the estimated reserve for maintenance as a deduction for each of said years, the Commissioner holding that the liability of the company for maintenance was contingent, not fixed, and therefore was not a proper deduction.

Subsequent to the payment of the assessment, the company filed amended returns for the years 1917, 1918, and 1919, for each of which additional tax had been assessed, and also for the years 1921 and 1922. By such returns the company sought to project its taxable year, so far as each contract was concerned, five years after the payment to it of the last installment of the contract price. The theory upon which it based its claim to a right to file such returns, and to the consequent return of the amounts for the recovery of which the instant action has been brought, is that it always kept its accounts on the basis of a completed contract, and is entitled to continue that system of bookkeeping, as it clearly reflects its income. True, it admits, prior to the amended returns, the contract was considered completed, so far as accounting was concerned, when the final payment was made to it; but this was possible only by the common accounting practice of setting up an estimated reserve

for maintenance against the gross return from the contract. This practice, says plaintiff, the Commissioner has correctly decided is not proper in a tax return, because it sets up a contingent liability as a deduction; but by the amended return the plaintiff is not deducting a contingent outlay, but an actual expense.

It is contended that plaintiff's contracts were not completed prior to the expiration of the maintenance period, and therefore, as the Commissioner has recognized the accounting principle of withholding income and expense until a contract is completed, the company is justified in its claim that it is not required to charge itself with income until its obligations under the contract have been fully determined. Carrying out its theory, the company has amended its original returns, by deducting the amounts returned as received on contracts in 1917 to 1922, inclusive, from the net income theretofore returned for such years. The gross profits of 1916 and 1917 were added to the net profits of 1921 and 1922, respectively. The result shown by the amended return was an overpayment of $12,368.08, on tax for 1917; $29,602.97, on tax for 1918; $4,768.28, on tax for 1919; $1,378.67, on tax for 1920; $7,402.47, on tax for 1921; and $4,458.10, on tax for 1922. The total excess collected is alleged in the statement of claim to be $59,978.57, of which amount $38,672.93 was alleged to have been paid to the defendant, and, of this last-mentioned amount, $26,123.03 was paid under protest. Plaintiff's calculation of the total overpayment, owing to an accounting error, was not correct, and it has been stipulated that the total overpayment, under plaintiff's theory of the law governing the instant case, is $48,938.02, of which amount $27,632.38 was paid to this defendant.

The claim of the plaintiff is one not likely to meet with immediate assent upon the first statement of it. It does not seem right that a company, by a mere change in its methods of keeping its accounts, should be able to protect its actual receipts from tax in the year of receipt, when the rate is high, and continue its tax liability thereon to a year five years in advance, when the rate is low, and in the meantime have the use of such receipts. This is the exact result which plaintiff seeks in the instant case. It does not endeavor merely to put off its accounting for the 1917 taxes until 1922, when all deductions from its 1917 gross income have been made, but seeks to make its 1917 net income

subject to the lower 1922 rate. It finished a number of roads in 1917, and received therefor large sums of money. In those sums were included the actual net earnings for said year. The exact amount of those earnings would not develop for five years, it may be; but the ultimate net income for 1917 was something quite distinct from the time when the exact amount of that net income should be established. For its own purposes the plaintiff had the right to keep its books in such a manner that it could determine whether it had gained or lost upon each of its contracts. From that viewpoint its original method of bookkeeping may be quite correct, as, indeed, may be the method used in the amended return; but when, for tax purposes, gross income is carried as a liability for five years, with the result that the company is made to appear to have lost money during a particular year in which it actually made a considerable gain, then the method does not clearly reflect taxable income. It must not be forgotten, in a consideration of the instant case, that plaintiff's receipts from uncompleted contracts in the year preceding completion were carried as a liability, and upon completion, with the receipts of the year of completion, were transferred and credited to the contracts. This method was correct enough, perhaps, so far as keeping plaintiff's books in balance was concerned; but so carrying receipts as a liability did not constitute an actual loss of income, and when plaintiff, in its amended tax return, set such liability over against its actual (but less) gain for the year, thus showing a loss, it did not correctly represent the actual facts.

But, says plaintiff, the Commissioner has recognized the withholding of income and expense until the completion of the contract, and article 36 of Tax Regulation 45, and article 36 of Regulation 62, are cited. Plaintiff further points to the lack of objection by the Commissioner to its original tax returns, wherein it accounted for gross income and claimed deductions in the year of the completion of the construction. The Commissioner, by the regulations cited, and in practice, did allow building contractors to charge themselves with gross income as of the year of the completion of the work, and to claim deductions upon that work for the same year, despite the wording of the statute (section 234 (a) of the Revenue Acts of 1918 and 1921, 40 Stat. 1077, and 42 Stat. 254), which provides:

"Sec. 234 (a). That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

"(1) All the ordinary and necessary expenses paid or incurred *during the taxable year* in carrying on any trade or business."

The statutes seem, upon a casual reading, to be in conflict with the Commissioner's regulations relative to long term building contracts, but as to this matter no decision is required of us in the instant case. The Commissioner allowed plaintiff to account for its taxes upon the basis of the regulations as to long term contracts. The only question in the present case is the propriety of the plaintiff's claim of the right to extend its tax liability from its receipt of the contract price to the end of the maintenance period, and in the meantime to carry the gross profits of the work as a loss. We can well understand the reasons underlying the promulgation of article 36, supra. The accounting for tax upon a cash receipt and disbursement basis, where the contractor had kept his accounts upon an accrual basis, would present a matter of almost insuperable difficulty, while an acceptance of the latter method, assuming an approximately equal amount of business done each year by the contractor, would probably bring about the same tax return and at the same time assure ease in its computation.

But plaintiff's situation is not that contemplated by article 36. Its contracts averaged six months from start of the work to the receipt of the contract price. Plaintiff, prior to its amended return, had always treated the receipt of the last payment as the date of the completion of the contract. It now seeks to extend that date for a period of five years. The Commissioner accepted plaintiff's original accounting methods, with the exception of his disallowance of the admittedly invalid claim of a deduction based upon a contingency, but he has refused his assent to the extension claimed by the amended return. He has not interferred with plaintiff's methods of accounting, but has refused to recognize plaintiff's change of method as within the scope of article 36 of the Tax Regulations or as correctly setting forth plaintiff's actual income.

The commissioner was justified, in our opinion, in his refusal to make the refund claimed by plaintiff. The maintenance clause of the latter's contracts was a mere guaranty of the construction work, and was collateral to the main contract. Under it plaintiff might, or might not, be called upon to repair its work

within the five years immediately succeeding the final payment to it. If plaintiff's contention were allowed to succeed, an accounting fallacy would deprive the United States of tax actually due it. An examination of the exhibits attached to the statement of claim discloses that plaintiff in each year from 1917 to 1920, inclusive, had a substantial net income; yet the instant action is founded upon the theory that plaintiff lost money in those years. The explanation of the apparent contradiction is found in plaintiff's entry of the year's gross income, which contained a substantial net income, as a liability. Thus a loss, created entirely by method of bookkeeping, is made to wipe out an actual net gain. Despite plaintiff's method of accounting, the actual net gain remains in each of the years in question in the present action. It follows that plaintiff is not entitled to recover all tax paid by it for those years, as is its object in the instant action. It will be noted that plaintiff is not here endeavoring to recover amounts actually paid out in maintenance of its 1917–1920 contracts, which its original estimated reserve was intended to cover, but is trying to recover all tax paid for said years. The actual amount of maintenance costs was not definitely established by the testimony.

Judgment will be entered for the defendant.